FRED NORTON (CA SBN 224725)
(*applying for pro hac vice*)
fnorton@nortonlaw.com
LEAH JUDGE (CA SBN 302406)
(*applying for pro hac vice*)
ljudge@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900

Attorneys for Plaintiff
MARC COHODES

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MARC COHODES, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PARKER PETIT, an individual; and SPRINGDALE PUBLISHERS, LLC, a limited liability company,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>DEMAND FOR JURY TRIAL |

## SUMMARY OF THE ACTION

1.      Defendant Parker "Pete" Petit is a convicted felon and the former Chairman and CEO of MiMedx Group, Inc., a biomedical company based in Georgia.  In 2018, Petit was forced to resign from MiMedx amid several government and internal investigations into MiMedx's fraudulent accounting practices, suspect dealings with the federal government, and an aggressive campaign to silence employees voicing concerns about MiMedx's misconduct.

2.      Plaintiff Marc Cohodes is a long-time stock market analyst and short seller who has also provided valuable information to the Securities and Exchange Commission and the Department of Justice regarding securities fraud and misconduct at several companies.  Around September 2017, Cohodes began following allegations of securities and FDA improprieties at MiMedx.  He became a vocal critic of the company.  Cohodes wrote to the company's Board of Directors, its top management, its auditors, and the SEC about his concerns.  Because Cohodes made no secret of his identity, former and current employees reached out to Cohodes with information about wrongdoing at MiMedx, including by Petit.

3.      Petit and MiMedx responded by attacking Cohodes.  They and their representatives made false claims about the legality of Cohodes's short sales, sent personal attacks to Cohodes, and denied the validity of his criticisms of the company's public reporting and FDA compliance.  Petit also got his good friend, then Senator Johnny Isakson, to contact the FBI on his behalf and send FBI agents to Cohodes's home, who told Cohodes to stop tweeting about MiMedx or there would be "consequences."  Petit then leveraged his political connections to try to have Cohodes indicted for securities fraud for his short sales of MiMedx stock.

4.      Cohodes was not indicted because he did nothing wrong.  Petit, in contrast, was convicted of securities fraud in 2020 for orchestrating a scheme to fraudulently inflate MiMedx's revenue—exactly the misconduct Cohodes had helped expose.  Petit was then sentenced to a year in federal prison and fined $1 million.  That same year,

MiMedx paid $6.5 million to settle allegations that it had knowingly overcharged the government for medical products.

5.      Four years later, Petit remains a stranger to personal accountability.  Instead, through his vanity press, defendant Springdale Publishers LLC, he has self-published a 450-page book—*The Entrepreneur's Dilemma, Should I Take my Company Public?*—proclaiming his innocence and blaming everyone but himself for his and MiMedx's troubles.  Petit concocts a tale peopled by greedy auditors, self-serving government attorneys, vengeful whistleblowers, and "illegal" short sellers, all of whom allegedly conspired to unfairly malign him and MiMedx.  Petit has also posted a promotional video to his personal website "https://petepetit.com" in which he previews many of the lies in his book.

6.      Plaintiff Cohodes is a central villain in Petit's victimization fairy tale, and Petit defames Cohodes throughout his newly published book in an effort to deflect blame from his own misconduct.  Specifically, Petit falsely asserts that:

- Cohodes engages in "illegal" and "unlawful" short selling;
- Cohodes organized a "short and distort" campaign against MiMedx;
- Cohodes intentionally spread false information about MiMedx;
- Cohodes manipulated MiMedx employees to make false statements about MiMedx and/or Cohodes made false statements about MiMedx and then falsely attributed the statements to MiMedx employees;
- Cohodes is "psychotic," "delusional," and "detached from the truth."

7.       Each of these statements is false and defamatory, and Petit either knew the statements were false or acted with reckless disregard as to their falsity when he made them.  Petit had no factual basis to make these statements.

8.      Moreover, Petit acted with actual malice.  By his book's own account, Petit brought his myriad false allegations of criminal conduct by Cohodes, along with purportedly supporting documentation, to the SEC and DOJ.  Despite the gravity of the

charges Petit asserted, the evidence Petit claimed to have, and the influential political connections Petit brought to bear, neither the SEC nor DOJ ever sued, charged, or indicted Cohodes for anything.  That is because, as Petit well knows, there is and was no truth to his claims.  Nonetheless, Petit persists in his lies.

9.     Discredited, convicted, and imprisoned, Petit has published a screed of half-truths and outright lies in a misguided attempt to harm Cohodes's professional reputation and resurrect his own.  Through publication of his book, Petit has inflicted and continues to inflict reputational and business harm on Cohodes.  For these reasons, Cohodes seeks damages for Petit's wrongful and defamatory conduct, and injunctive relief to prevent Petit from further disseminating false and misleading statements about Cohodes.

## PARTIES

10.    Plaintiff Marc Cohodes is an individual who resides in Montana and is a citizen of Montana.  Plaintiff Cohodes is a former hedge fund manager, a long-time stock market analyst, and a short seller.

11.    Defendant Parker "Pete" Petit is an individual who is domiciled in Georgia and is a citizen of Georgia.  Until he was forced to resign in June 2018, Petit was the Board Chairman and Chief Executive Officer of MiMedx Group, Inc., a Georgia-based biomedical company. Petit's home address is the same as the Milton, Georgia address provided for Springdale Publishers, LLC on file with the Georgia Secretary of State.

12.    Defendant Springdale Publishers, LLC is a Georgia limited liability company with its principal place of business located in Milton, Georgia.

## JURISDICTION AND VENUE

13.    The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the action involves a dispute between citizens of different states and the amount in controversy, including the value of both monetary and injunctive relief, and exclusive of interests and costs, exceeds the sum or value of $75,000.

14.    Complete diversity exists because Plaintiff Cohodes is a citizen of the state

of Montana; Defendant Petit is a citizen of the state of Georgia; and Defendant Springdale Publishers is a limited liability company incorporated in the state of Georgia with its principal place of business in Georgia.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Specifically, Defendant Petit resides in Fulton County and Defendant Springdale Publishers' principal place of business is in Fulton County.

## DIVISIONAL ASSIGNMENT

16.    The case should be assigned to the Atlanta division because Defendant Petit resides in Fulton County and Defendant Springdale Publishers' principal place of business is in Fulton County.

## GENERAL ALLEGATIONS

17.    Pete Petit, through his vanity press Springdale Publishers, published *The Entrepreneur's Dilemma* in or around June 2024.  The book is available for purchase on Amazon in hardcover, paperback, and Kindle versions.  Soon after publication, Petit also mailed a promotional postcard to MiMedx shareholders urging them to purchase his book.  MiMedx has at least 375 institutional owners and shareholders, including large investors such as the Vanguard Group, Blackrock, and the Royal Bank of Canada.  Petit controls and owns Springdale Publishers.  Petit also promotes his book through his account on X (formerly known as Twitter).

18.    According to Petit, the "principle goal" of *The Entrepreneur's Dilemma* is to discuss "the new and broader risks of managing or investing in a public company in today's legal and regulatory environment."  In practice, the book alternates between self-congratulation and defamatory condemnation of Petit's perceived enemies.  Central among those enemies is plaintiff Marc Cohodes.

19.    Although Petit asserts that the book "is a true story of a portion of [his] life" that contains only "minor inaccuracies" and is not intended to cause "unjust harm," the

book is replete with information about plaintiff Cohodes that Petit knew to be false at the time of publication and that Petit intended to harm Cohodes.

### The Rise and Fall of MiMedx

20.     Much of Petit's book focuses on his tenure at MiMedx, the Georgia-based biomedical company that Petit led as Board Chairman and CEO from 2009 until his forced resignation in June 2018.  In 2017, Fortune magazine named MiMedx among the five fastest-growing public companies in America.  At the time, MiMedx's share price approached $18 with a market capitalization nearing $2 billion.  By the end of 2018, share price had fallen to around $3, and federal investigators were scrutinizing the company's government contracts and accounting practices.

21.     MiMedx went public in 2008 and acquired Surgical Biologics LLC, a leading processor of amniotic tissue, in 2011.  MiMedx made wound treatments from this amniotic tissue that it processes into patches or grinds into a powder, in a process called micronizing, that can be applied topically or by injection.

22.     MiMedx's amniotic-based products faced significant scrutiny from the Food and Drug Administration as early as 2013.  At that time, the agency warned the company that its injectables had not been approved for "safety and efficacy" and that their sales violated FDA regulations.  The FDA advised MiMedx that certain of its products did not meet the minimal manipulation criteria in the FDA's regulations and thus were considered a biological product requiring a license.  Since none of MiMedx's products were licensed, the FDA notified MiMedx that its actions had violated the law.

23.     The FDA then inspected MiMedx manufacturing facilities in August 2014, determining that the company was violating FDA requirements by failing to follow proper procedures for "cleaning and sanitizing [] equipment" and other deviations from "current good tissue practices."  In a subsequent 2016 inspection, the FDA again described serious issues with MiMedx injectable manufacturing, including a lack of controls to determine product purity, a lack of quality control criteria, a failure to

demonstrate that its products could not transmit communicable diseases, a failure to test products for objectionable microorganisms, and a lack of expiration dates.  Veterans Administration medical facilities were a major customer for these amniotic products.

24.    MiMedx told the FDA in early 2017 that it had corrected the identified deficiencies, conducting "a wholesale validation of [its] manufacturing process."  In fact, MiMedx was only testing its finished product on a quarterly basis, rather than by lot—the regulatory gold standard.

25.    For years, Petit and MiMedx COO Bill Taylor had touted MiMedx's consistent quarter-over-quarter revenue growth as a key metric of the company's success. Around this same time, in 2017, allegations emerged that MiMedx was engaged in "channel stuffing," a deceptive practice used by companies to inflate revenues or sales immediately prior to a reporting period, typically by deliberately sending its distributors more products than they are able to use or sell.  These allegations were supported by first-hand accounts from MiMedx employees.

26.    Around September 2017, Plaintiff Cohodes began to follow these allegations of securities and FDA improprieties at MiMedx.  Cohodes became a vocal critic of these practices online and gave a presentation at a respected investors conference in New York in October 2017 where he cited complaints by former MiMedx employees who said they were fired after reporting their concerns about the company's business practices to Petit.

27.    Cohodes also publicly built a short position in the company's stock. Investors "short" a stock when they believe it is overvalued and its price will decline in the future, typically borrowing the stock, selling it on the open market, buying it back later for less money, and then returning it to the original lender.  Cohodes often shorts and exposes companies that he has a factual basis to believe are engaged in fraud, illegal conduct, questionable accounting, or stock manipulation, reporting his concerns to, and cooperating with, the SEC and DOJ.  Silvergate Bank, Signature Bank, Lernout & Hauspie, NovaStar Financial, Krispy Kreme Donuts, and AremiSoft are among the

companies whose fraudulent practices he has helped expose.

28.     Petit and MiMedx responded to Cohodes's critiques by attacking him.  They and their representatives made false claims about the legality of Cohodes's short sales, attacked Cohodes personally, and denied the validity of his criticisms of the company's public reporting and FDA compliance.  MiMedx even devoted an entire page of its corporate website to "Short Selling Commentary," containing various blog posts directly attacking Cohodes.

29.     As revealed by FOIA requests, Petit and MiMedx executives enlisted then-Georgia Senator Johnny Isakson to obtain the FBI's assistance to silence Cohodes.  The day after Cohodes's October 2017 presentation in New York, Senator Isakson contacted the FBI on behalf of his constituent and "good friend" Petit with purported concerns about "stock manipulation" by Cohodes.  This culminated with two FBI agents paying a threatening visit to Cohodes's California home in December 2017, where they demanded Cohodes stop tweeting about Petit or MiMedx lest there be "consequences."

30.     As Petit details in *The Entrepreneur's Dilemma*, his campaign to silence Cohodes did not end there.  Instead, he and MiMedx sent binders of documents purporting to evidence Cohodes's "illegal" trading activities to the DOJ and SEC, even meeting with DOJ agents in early 2018.  FOIA-released documents also show that the U.S. Attorney's Office for the Northern District of California—relying on information provided to it by MiMedx—opened an investigation into Cohodes for securities fraud in October 2019.

31.     By this time, however, both external auditors and federal investigators were scrutinizing MiMedx's accounting practices and government contracts, validating Cohodes's allegations.  By June 2018, the company had restated its financials for fiscal years 2012 through 2016, its board had forced Petit and Taylor to resign, and three VA employees had been indicted for accepting bribes from MiMedx staff.  Nasdaq delisted the company later that year.

32.     Then in May 2019, MiMedx's audit committee issued a damning report based on an investigation by outside counsel.  As MiMedx reported, the investigation uncovered "evidence of material wrongdoing on the part of the Company's prior senior management team." This included Petit and Taylor "purposely [taking] action to disregard revenue recognition rules under GAAP and manipulate the timing and recognition of revenue, act[ing] against employees who raised concerns about the Company's practices and marginaliz[ing] the Company's legal and accounting departments and advisors."  The report further found that Petit made "material misstatements and omissions" to the SEC, external auditors, and the company's Board, and even "falsely testified under oath" about MiMedx's largest distributor.

33.     Petit's misconduct included directing an internal investigation dubbed "Project Snow White" that was designed to uncover wrongdoing committed by employees who raised internal concerns about MiMedx's business practices, rather than assess the merits of those concerns.  "Project Snow White" included installing a secret surveillance system that recorded over 2,750 hours of video of MiMedx employees, along with the nonconsensual recording of employee phone calls.

34.     Finally in November 2019, the DOJ charged both Petit and Taylor with accounting fraud for their years-long scheme to falsely inflate MiMedx's sales revenue. MiMedx paid $1.5 million to the SEC to settle similar allegations.  A jury found both Petit and Taylor guilty of securities fraud in late 2020.  Petit moved for a judgment of acquittal or new trial, arguing, among other things, that there was insufficient evidence that he intended to mislead and defraud investors.  The federal district court judge denied that motion, citing numerous examples of Petit's deliberate and knowing misconduct and deception.  The court sentenced Petit to a year in federal prison, expressly reducing the sentence from what it would have otherwise been just on account of Petit's age and cancer diagnosis.  Petit appealed the conviction, which was affirmed in all respects.

35.     Having lost at every turn in the legal courts, Petit hopes for a different result

---

in the court of public opinion.  To that end, he has written a book that falsely denies his own criminal conduct and tries to blame others—including Cohodes—for illegally causing his downfall.

### Defamatory Statements about "Unlawful Short Selling" and "Short-and-Distort" Campaigns

36.    Petit repeatedly and falsely accuses Cohodes of market manipulation in *The Entrepreneur's Dilemma*.  Specifically, Petit accuses Cohodes of "illegal" and "unlawful" short selling of MiMedx's stock.  Petit has made these defamatory and false accusations—which are intended to portray Cohodes as a criminal and market manipulator—knowing they are false, or at the very least with reckless disregard for their falsity.

37.    Short selling, just like taking a "long" position in a stock (i.e., buying a stock with the intent to sell when the stock's value increases), is not illegal.  However, certain short selling practices are illegal.  One such practice—known as "short and distort"—involves shorting a stock and then intentionally spreading false, negative information to attempt to drive down the stock price.  Short sellers can also engage in "naked" short selling, which involves the short-selling of a security without having first borrowed it or making sure it can be borrowed; the practice is largely illegal, with a few exceptions.

38.    Petit repeatedly and falsely accuses Cohodes of engaging in illegal short selling.  He devotes an entire chapter of his book to "Short Selling," including a subsection on "Short and Distort Campaigns."  Leaving no doubt that the chapter is directed at Cohodes, it opens with Petit's statement that he will "give some examples of my allegations of Cohodes' unlawful short selling."  Petit then makes the following false statements:

> As a result of my personal experiences and conversation with numerous attorneys and others, I would allege that ***Cohodes and his Cabal orchestrate and participate in short selling attacks commonly referred to by the SEC as "Short and Distort" campaigns. These attacks could involve Cohodes and several of his shills, such as Viceroy Research and Aurelius Value.***

(Page 186)

39.     This statement is false and misleading.  In truth and in fact, Cohodes does not participate in "short and distort" campaigns, he did not participate in a "short and distort" campaign related to MiMedx, and Viceroy Research and Aurelius Value are not Cohodes's "shills."  Cohodes is an unaffiliated investor and short seller who independently performs fact-based research on companies or relies on fact-based research from other market participants.  He shorts, but he does not "distort."  Cohodes has no control over Viceroy or Aurelius.

40.     Petit knows these statements are false or at least acted with reckless disregard as to their falsity.  As Petit describes in his book, he brought these "short and distort" and collusion allegations, along with purportedly supporting "binders" of evidence, to federal law enforcement officials.  They did not bite.  If there were any truth to these allegations, Cohodes would have been indicted.  Instead—as evidenced by Petit and Taylor's securities fraud convictions, SEC penalties paid by MiMedx, MiMedx's False Claims Act settlement, the indictment of VA employees for accepting bribes from MiMedx, communications provided to MiMedx by the FDA, and the damning May 2019 report from MiMedx's outside counsel—information Cohodes shared about MiMedx was no "distortion."  It was the truth.

41.     Petit also falsely states in *The Entrepreneur's Dilemma*:

> ***I believe that Cohodes along with his trading partners, who probably include hedge funds and other individuals, act in a coordinated effort to drive down the stock price of a targeted publicly traded company after they have prepositioned their short sale trades of the company's stock. . . . His Cabal then attacks with a combination of coordinated media or pseudo-research reports in addition to targeted social media activity, all of which are aligned to benefit his trading activities on the attack day.*** (Page 186)

42.     These statements are false and misleading.  In truth and fact, Cohodes does not participate in "short and distort" campaigns, does not have a "cabal" of "shills," and does not have "trading partners."  Cohodes is an unaffiliated short seller who performs

fact-based research on companies independently or relies on fact-based research from other market participants. He shorts, but he does not "distort." Nor does Cohodes "pre-position" his short trades before coordinating the release of "pseudo-research." There are no coordinated "attack days."

43. Petit knows these statements are false or at least acted with reckless disregard as to their falsity. As Petit describes in his book, he brought these allegations, along with purportedly supporting evidence, to federal law enforcement officials. If there were any truth to these allegations, Cohodes would have been indicted. Instead—as evidenced by Petit and Taylor's securities fraud convictions, SEC penalties paid by MiMedx, MiMedx's False Claims Act settlement, the indictment of VA employees for accepting bribes from MiMedx, communications provided to MiMedx by the FDA, and the damning May 2019 report from MiMedx's outside counsel—information shared about MiMedx by Cohodes was no "distortion" or "pseudo-research." It was the truth.

44. Petit also falsely states in *The Entrepreneur's Dilemma*:

I believe that **Cohodes could have possibly been compensated by certain hedge funds** that had amassed substantial losses over the years by short selling MiMedx, although I have no proof of this. (Page 187)

45. This statement is false and misleading. Petit's statement is tantamount to accusing Cohodes of conspiring with hedge funds to illegally manipulate MiMedx's stock. In truth and in fact, Cohodes is not compensated by anybody for his statements or trades, let alone for statements or trades involving MiMedx. Cohodes independently decides whether he will short a stock.

46. Petit knows this statement to be false or at least acted with reckless disregard as to the statement's falsity—he even admits that he has no basis for the claim. Petit brought these allegations to federal law enforcement officials, and they gained no traction. Petit was indicted, convicted, and imprisoned; Cohodes was not. As evidenced by Petit's own indictment, SEC penalties paid by MiMedx, and the damning May 2019 report from MiMedx's outside counsel, it was Petit—not Cohodes—who participated in a

MiMedx-related conspiracy.  Cohodes was not involved with hedge funds in any conspiracy involving MiMedx.

47.     Petit likewise falsely states in a video uploaded to his personal website (www.petepetit.com) to promote *The Entrepreneur's Dilemma:*

> I think [hedge funds with short positions in MiMedx] also ***associated themselves with one particular short seller*** who started the attack on the company publicly. And that particular individual was very very vocal in terms of social media.

48.     This statement is false and misleading.  The context of the video makes clear that the "particular short seller" referenced by Petit is Cohodes.  Petit's statement is tantamount to accusing Cohodes of conspiring with hedge funds to illegally manipulate MiMedx's stock.  In truth and in fact, Cohodes was not compensated by anybody for his statements or trades, let alone for statements or trades involving MiMedx.  Cohodes independently decided whether he would short MiMedx or any other stock.

49.     Petit knows this statement to be false or at least acted with reckless disregard as to the statement's falsity.  Petit brought these allegations to federal law enforcement officials, and they gained no traction.  Petit was indicted, convicted, and imprisoned; Cohodes was not. As evidenced by Petit's own indictment, SEC penalties paid by MiMedx, and the damning May 2019 report from MiMedx's outside counsel, it was Petit—not Cohodes—who participated in a MiMedx-related conspiracy.  Cohodes was not involved with hedge funds in any conspiracy involving MiMedx.

50.     Petit also falsely states in *The Entrepreneur's Dilemma*:

> In the case of MiMedx, all of Cohodes' aligned publicists with their "Short and Distort" themes have now been identified, with the exception of Aurelius. ***I believe that Aurelius is merely a sponsored website that is used by people who are aligned with Cohodes' interests for their publications.*** Importantly, the individuals behind Viceroy were unmasked. See Appendix 13. (Page 187)

51.     This statement is false and misleading.  Petit's statement is tantamount to accusing Cohodes of conspiring with others to illegally manipulate MiMedx's stock.  In

truth and in fact, Cohodes does not sponsor an "Aurelius" website.

52.     Petit knows this statement to be false or at least acted with reckless disregard as to the statement's falsity.  Petit brought these allegations to federal law enforcement officials, and they gained no traction.  Petit was indicted, convicted, and imprisoned; Cohodes was not.  As evidenced by Petit's own indictment, SEC penalties paid by MiMedx, and the damning May 2019 report from MiMedx's outside counsel, it was Petit—not Cohodes—who participated in a MiMedx-related conspiracy.  Cohodes did not sponsor an Aurelius website or conspire with others to sponsor such a website.

53.     Petit also falsely states in *The Entrepreneur's Dilemma*:

There have been multiple attempts to damage MiMedx, and ***I believe the motivations to damage MiMedx come from short sellers engaged in Short and Distort campaigns***. (Page 187)

54.     These statements are false and misleading.  In truth and in fact, Cohodes— and context leaves no room for doubt that this statement is about Cohodes—did not engage in a "short and distort" campaign against MiMedx.  Cohodes of course shorted the stock, but there was no "distortion."

55.     Petit knows these statements are false or at least acted with reckless disregard as to their falsity.  Petit knows that the information Cohodes shared about MiMedx was truthful, as evidenced by Petit and Taylor's securities fraud convictions, SEC penalties paid by MiMedx, MiMedx's False Claims Act settlement, the indictment of VA employees for accepting bribes from MiMedx, communications provided to MiMedx by the FDA, and the damning May 2019 report from MiMedx's outside counsel.

56.     Petit also falsely states in *The Entrepreneur's Dilemma*:

[T]his discussion should clearly assist in understanding how I allege these publications with false information were created, which is with the full knowledge of the short sellers.  ***I believe they had in-depth knowledge as to when the false information was going to be released.  In other words, they had in-depth knowledge as to when the attacks would occur, and they could preposition their stake in the company's securities for their benefit.  In effect, this is a form of trading with "inside information."  This is often referred to as "Front Running."*** (Page 188)

---

57.     These statements are false and misleading.  In truth and in fact, Cohodes did not have "knowledge" about when "false information" was going to be released about MiMedx, and he did not pre-position trades based on such information.  Again, Petit is a accusing Cohodes of a participating in a "short and distort" campaign.  Cohodes shorted MiMedx stock but there was no distortion; he shared truthful information about MiMedx.

58.     Petit knows these statements are false or at least acted with reckless disregard as to their falsity.  Petit knows that the information Cohodes shared about MiMedx was truthful, as evidenced by Petit and Taylor's securities fraud convictions, SEC penalties paid by MiMedx, MiMedx's False Claims Act settlement, the indictment of VA employees for accepting bribes from MiMedx, communications provided to MiMedx by the FDA, and the damning May 2019 report from MiMedx's outside counsel. Petit also knows Cohodes did not "pre-position" trades or engage in a "short and distort" campaign because he brought these same allegations, purportedly with supporting evidence, to federal law enforcement and Cohodes was not indicted.  But Petit was.

### *Defamatory Statements about "Manipulation" of MiMedx Employees and Creating False Information*

59.     In connection with the purported "short and distort" campaign, *The Entrepreneur's Dilemma* also falsely accuses Cohodes of falsifying information and manipulating MiMedx employees.

60.     Petit falsely states in *The Entrepreneur's Dilemma*:

[Cohodes's] publications included his tweets, ***documents he developed from interviews he had with former MiMedx salespersons as well as other documents he would create. There is not much logic to the documents because most of the statements are not factual; they are not true***. However, I think he certainly believed that the more misinformation he could publish the further down the MiMedx stock price would be pushed and the more money he would make from his efforts. (Page 194)

61.     These statements are false and misleading.  The statements imply (and Petit intends them to imply) that Cohodes manipulated MiMedx employees, convincing them to make false statements about the company, or simply made things up about MiMedx

and then falsely attributed the made-up information to MiMedx employees.

62.     In truth and in fact, Cohodes did speak with MiMedx employees in 2017 and 2018.  These employees raised credible, serious, and fact-based concerns about ongoing illegal and unethical conduct by MiMedx and its executives.  Cohodes did not manipulate either the employees or the information they provided to him.  Cohodes accurately reported factual information conveyed to him by MiMedx employees.

63.     Petit knows these statements are false or at least acted with reckless disregard as to their falsity.  MiMedx employees raised with Cohodes the very concerns that led to Petit and Taylor's securities fraud convictions, MiMedx's settlement with the SEC, MiMedx's False Claims Act settlement, and the indictment of VA employees for accepting bribes from MiMedx.  The employees' concerns are also reflected in the communications provided to MiMedx by the FDA and the damning May 2019 report from MiMedx's outside counsel.  Petit actively suppressed the truth of those employees' concerns; instead, he "directed and oversaw an internal investigation dubbed 'Project Snow White' that focused on potential wrongdoing by these employees, rather than the merits of their allegations."  Petit knows those concerns were valid.

64.     Petit also falsely states in *The Entrepreneur's Dilemma*:

> As in our case, employees and former employees can be manipulated by a short seller to file whistleblower claims. Cohodes went on a rampage of talking to former sales employees trying to continue to build some allegation against the company. ***I have documents that Cohodes created by doing supposed interviews with former MiMedx salespersons that were terminated for cause. Cohodes and one of his employees would conduct the interviews and make suggestions and claims that led to false allegations against MiMedx.***" (Page 165)

65.     These statements are false and misleading.  The statements imply (and Petit intends them to imply) that Cohodes manipulated MiMedx employees, convincing them to make false statements about the company, or simply made things up about MiMedx and then falsely attributed the made-up information to MiMedx employees.

66.     In truth and in fact, Cohodes did interview MiMedx employees in 2017 and

2018, but Cohodes did not make "suggestions or claims that led to false allegations against MiMedx." Rather, Cohodes listened to MiMedx employees share their legitimate concerns about MiMedx's misconduct. The information shared with Cohodes during these interviews did not lead to "false allegations"; they led to the exposure of MiMedx and Petit's actual misconduct.

67.    Petit knows his statements are false or at least acted with reckless disregard as to their falsity. MiMedx employees raised with Cohodes the very concerns that led to Petit and Taylor's securities fraud convictions, MiMedx's settlement with the SEC, MiMedx's False Claims Act settlement, and the indictment of VA employees for accepting bribes from MiMedx. The employees' concerns are also reflected in the communications provided to MiMedx by the FDA and the damning May 2019 report from MiMedx's outside counsel. Petit actively avoided learning truth of his former employees' concerns; instead, he "directed and oversaw an internal investigation dubbed 'Project Snow White' that focused on potential wrongdoing by these employees, rather than the merits of their allegations." Petit knows those concerns were valid.

68.    Petit also falsely states in *The Entrepreneur's Dilemma*:

> Cohodes literally interviewed almost every salesperson that we had ever terminated. ***He would conduct interviews with these individuals and create documents supporting the interviews. He was effective at manipulating people who were irritated at the company*** because we terminated them for cause related to their violation of government regulations and laws or corporate rules. (Page 204)

69.    These statements are false and misleading. The statements imply (and Petit intends them to imply) that Cohodes "created" documents that did not reflect what employees actually told him during interviews, spinning information for his own benefit.

70.    In truth and in fact, Cohodes did interview MiMedx employees in 2017 and 2018, but Cohodes drafted documents that accurately reported what the employees told him during those interviews. Cohodes did not manipulate "people who were irritated at the company"; Cohodes created a space where employees—several of them whistleblowers—who had been abused and silenced by MiMedx could share their

legitimate concerns without fear of reprisal.

71.     Petit knows these statements are false or at least acted with reckless disregard as to their falsity.  The concerns shared by MiMedx employees with Cohodes are the very concerns that led to Petit and Taylor's securities fraud convictions, MiMedx's settlement with the SEC, MiMedx's False Claims Act settlement, and the indictment of VA employees for accepting bribes from MiMedx.  The employees' concerns are also reflected in the communications provided to MiMedx by the FDA and the damning May 2019 report from MiMedx's outside counsel.  As the May 2019 report concluded, "Petit and Taylor engaged in a pattern of taking action against employees who raised concerns about the Company's practices."

72.     Petit also falsely states in *The Entrepreneur's Dilemma*:

> I have read documents that he has written ***about issues that have been told to him by unreliable sources without any verification. He writes false tweets that he dreams up, and he will encourage other people to write false information as well***. None of that seems to bother him. ***He calls out, verbally and in writing, honorable people and accuses them of doing illegal things without any proof***. (Page 185)

73.     These statements are false and misleading.  In truth and in fact, Cohodes does not rely upon "unreliable sources without verification" before accusing people of acting illegally, via tweet or otherwise.  Before (correctly) accusing MiMedx and Petit of manipulating revenue reporting, failing to comply with FDA requirements, and harassing employees, Cohodes spoke with individuals who had direct knowledge of these activities, relied on research conducted by others who had done so, or relied on research containing careful analysis of MiMedx's financial reporting and other data.  Cohodes does not encourage anyone to write "false information."

74.     Petit knows these statements are false or at least acted with reckless disregard as to their falsity.  The purportedly "false" information Cohodes wrote about MiMedx was true.  Ultimately, Petit and Taylor were indicted and convicted for securities fraud; MiMedx paid the SEC penalties related to this same fraud; MiMedx entered a False Claims Act settlement with DOJ for overcharging the VA; VA employees

were indicted for accepting bribes from MiMedx; the FDA in fact told MiMedx that its manufacturing processes were noncompliant and its biologic products improperly licensed; and outside counsel issued a damning May 2019 report about Petit's misconduct and his terrorizing of employees. Cohodes did not "call out" Petit—presumably, the "honorable man"—without proof; jurors agreed with Cohodes that Petit was a criminal and sent him to prison.

### Defamatory Statements about Cohodes's Mental Health

75. In a further effort to tarnish Cohodes's reputation and rehabilitate his own, Petit defames Cohodes by attacking his mental health and assassinating his character. In *The Entrepreneur's Dilemma*, Petit falsely calls Cohodes "delusional," "maniacal," and "psychotic," attributing Cohodes's criticisms of MiMedx and Petit to "psychosis," and asserting that Cohodes "is detached from the truth."

76. These statements are false and misleading. In truth and in fact, Cohodes is tenacious in his efforts to uncover frauds and protect shareholders. His criticisms of MiMedx are based on MiMedx and Petit *actually engaging in* the conduct that Cohodes criticized.

77. Petit knew these statements are false or acted with reckless disregard for their falsity. Petit and Taylor were indicted and convicted for securities fraud; MiMedx paid the SEC penalties in connection with this same fraud; MiMedx's entered a False Claims Act settlement with DOJ for overcharging the VA; VA employees were indicted for accepting bribes from MiMedx; the FDA in fact told MiMedx that its manufacturing processes were noncompliant and its biologic products improperly licensed; and outside counsel issued a damning May 2019 report about Petit's misconduct and his terrorizing of employees. Petit cannot defame Cohodes as a psychotic and delusional maniac detached from the truth simply because Cohodes—correctly—accused Petit of being a fraudster.

### Defamatory Statements about Cohodes's Actions in Canada

78.     Petit also makes baseless, defamatory accusations about Cohodes's short selling activities in Canada.

79.     Petit falsely states in *The Entrepreneur's Dilemma* that Cohodes "destroyed" Canadian company Concordia Pharmaceuticals Inc.  Petit implies (and intends to imply) that Cohodes is responsible for the precipitous drop in Concordia's share value in 2016 and 2017.  Context makes obvious that Petit also implies (and intends to imply) that Cohodes engaged in a "short and distort" campaign against Concordia.

80.     Petit's statement is false and misleading.  In truth and in fact, Cohodes began building a short position in and publicly criticizing Concordia in October 2015 because the company had a corrupt CEO, a business model based on price-gouging, and too much debt that it could not service.

81.     Cohodes was aware that Concordia's chief executive officer, Mark Thompson, had previously been an executive at a different pharmaceutical company, Biovail, which had engaged in significant accounting fraud and paid millions of dollars to settle claims by the SEC.  Cohodes publicly pointed out that Concordia incurred enormous debt to buy up companies and prescription drugs that sold for modest amounts, with the goal of earning large profits by increasing the price of these well-established drugs by 1000% or more.  If the company could not charge those inflated prices, it would be unable to repay its $4 billion of debt.  As Cohodes expected, increased awareness of pharmaceutical price-gouging led to heightened political scrutiny of drug prices and made business models dependent on sizeable drug price increases, like Concordia's, unsustainable.  In response to these events, Concordia's share price dropped precipitously.  As reported in *The Wall Street Journal*, the company reported significant asset write-downs, lowered its sales and profitability projections, announced its finance chief would step down, and suspended its dividend. Thompson ultimately resigned from Concordia.

82.     Petit knows these statements are false or at least acted with reckless

disregard as to their falsity. Petit's book shows he followed the decline of Concordia, which was widely reported. The statements Cohodes made about Concordia, like those he made about MiMedx, were true and corroborated by the financial media. Petit's assertion that Cohodes "destroyed" Concordia is based on his (false) belief that Cohodes "destroyed" MiMedx by spreading false information. As Petit knows, the latter is false, and he cannot use it to bootstrap the former.

### FIRST CAUSE OF ACTION
**Defamation – Libel *Per Se***
**(Against All Defendants)**

83.     Plaintiff repeats and realleges paragraphs 1-82.

84.     As alleged above, Petit falsely writes in *The Entrepreneur's Dilemma*, published by Springdale Publishers:

> As a result of my personal experiences and conversation with numerous attorneys and others, I would allege that **Cohodes and his Cabal orchestrate and participate in short selling attacks commonly referred to by the SEC as "Short and Distort" campaigns. These attacks could involve Cohodes and several of his shills, such as Viceroy Research and Aurelius Value**. (Page 186)

85.     Because Defendants' statements accuse Cohodes of committing crimes, they constitute libel *per se.*

86.     At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated. Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

87.     Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation. Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets. By publishing a book that anyone can easily purchase through Amazon, and further marketing the book by mailing a promotional postcard to all MiMedx shareholders, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

---

88. Defendants' statements were unprivileged and were not made in good faith.

89. As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation. Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

90. Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation. He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

## SECOND CAUSE OF ACTION
### Defamation – Libel *Per Se*
### (Against All Defendants)

91. Plaintiff repeats and realleges paragraphs 1-90.

92. As alleged above, Petit falsely writes in *The Entrepreneur's Dilemma*, published by Springdale publishers:

> *I believe that Cohodes along with his trading partners, who probably include hedge funds and other individuals, act in a coordinated effort to drive down the stock price of a targeted publicly traded company after they have prepositioned their short sale trades of the company's stock. . . . His Cabal then attacks with a combination of coordinated media or pseudo-research reports in addition to targeted social media activity, all of which are aligned to benefit his trading activities on the attack day.* (Page 186)

93. Because Defendants' statements accuse Cohodes of committing crimes, they constitute libel *per se.*

94. At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated. Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

95. Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation. Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets. By publishing a book that anyone can easily purchase through Amazon, and further marketing the book by mailing a promotional

postcard to all MiMedx shareholders, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

96.    Defendants' statements were unprivileged and were not made in good faith.

97.    As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation.  Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

98.    Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

### THIRD CAUSE OF ACTION
### Defamation – Libel *Per Se*
### (Against All Defendants)

99.    Plaintiff repeats and realleges paragraphs 1-98.

100.    As alleged above, Petit falsely writes in *The Entrepreneur's Dilemma*, published by Springdale publishers:

I believe that ***Cohodes could have possibly been compensated by certain hedge funds*** that had amassed substantial losses over the years by short selling MiMedx, although I have no proof of this. (Page 187)

101.    Because Defendants' statements accuse Cohodes of committing crimes by conspiring with hedge funds to illegally short MiMedx stock, they constitute libel *per se*.

102.    At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated.  Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

103.    Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By publishing a book that anyone can easily purchase through Amazon, and further marketing the book by mailing a promotional postcard to all MiMedx shareholders, Defendants have ensured that their false

accusations against Cohodes will be widely disseminated.

104.   Defendants' statements were unprivileged and were not made in good faith.

105.   As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation.  Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

106.   Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

**FOURTH CAUSE OF ACTION**
**Defamation – Libel *Per Se***
**(Against All Defendants)**

107.   Plaintiff repeats and realleges paragraphs 1-106.

108.   As alleged above, Petit falsely writes in *The Entrepreneur's Dilemma*, published by Springdale publishers:

> In the case of MiMedx, all of Cohodes' aligned publicists with their "Short and Distort" themes have now been identified, with the exception of Aurelius*. **I believe that Aurelius is merely a sponsored website that is used by people who are aligned with Cohodes' interests for their publications**.* Importantly, the individuals behind Viceroy were unmasked. See Appendix 13. (Page 187)

109.   Because Defendants' statements accuse Cohodes of committing crimes by conspiring with others to illegally short MiMedx stock, they constitute libel *per se.*

110.   At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated.  Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

111.   Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By publishing a book that anyone can easily purchase through Amazon, and further marketing the book by mailing a promotional

postcard to all MiMedx shareholders, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

112.   Defendants' statements were unprivileged and were not made in good faith.

113.   As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation.  Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

114.   Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

## FIFTH CAUSE OF ACTION
### Defamation – Libel *Per Se*
### (Against Petit)

115.   Plaintiff repeats and realleges paragraphs 1-114.

116.   As alleged above, Petit falsely states in his promotional video for *The Entrepreneur's Dilemma*:

> I think [hedge funds with short positions in MiMedx*] also associated themselves with one particular short seller who started the attack on the company publicly*. And that particular individual was very very vocal in terms of social media.

117.   Because Petit's statement accuses Cohodes of committing crimes by conspiring with others to illegally short MiMedx stock, they constitute libel *per se.*

118.   At the time Petit made the above statement, Petit knew the statement was false and unsubstantiated.  Alternatively, Petit acted with reckless disregard as to the falsity of the statement.

119.   Petit made this defamatory statement to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Petit knows that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By making false statements in a video that anyone can view for free online, Petit has ensured that his false accusations against Cohodes will be widely disseminated.

120.   Petit's statement was unprivileged and was not made in good faith.

121.   As the direct and proximate result of Petit's statement, Cohodes has suffered injury to his professional reputation.  Petit acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

122.   Petit's conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

## SIXTH CAUSE OF ACTION
### Defamation – Libel *Per Se*
### (Against All Defendants)

123.   Plaintiff repeats and realleges paragraphs 1-122.

124.   As alleged above, Petit falsely writes in *The Entrepreneur's Dilemma*, published by Springdale publishers:

[T]this discussion should clearly assist in understanding how I allege these publication with false information were created, which is with the full knowledge of the short sellers.  *I believe they had in-depth knowledge as to when the false information was going to be released.  In other words, they had in-depth knowledge as to when the attacks would occur, and they could preposition their stake in the company's securities for their benefit. In effect, this is a form of trading with "inside information."  This is often referred to as "Front Running."* (Page 188)

125.   Because Defendants' statements accuse Cohodes of committing crimes by conspiring with others to illegally short MiMedx stock, they constitute libel *per se.*

126.   At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated.  Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

127.   Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By publishing a book that anyone can easily

purchase through Amazon, and further marketing the book by mailing a promotional postcard to all MiMedx shareholders, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

128.    Defendants' statements were unprivileged and were not made in good faith.

129.    As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation.  Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

130.    Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

## SEVENTH CAUSE OF ACTION
### (Defamation – Libel *Per Se*)
### (Against All Defendants)

131.    Plaintiff repeats and realleges paragraphs 1-130.

132.    As set forth above, Petit, through Springdale Publishers, falsely states that Cohodes "destroyed" Canadian company Concordia Pharmaceuticals Inc.

133.    As set forth above, context makes plain that Defendants imply, and intend to imply, that Cohodes illegally shorted Concordia stock through a "short and distort" campaign, just as they falsely accuse Cohodes of doing with MiMedx.

134.    Because Defendants' statements accuse Cohodes of committing crimes, they constitute libel *per se.*

135.    At the time Defendants published The Entrepreneur's Dilemma, Defendants knew these statements were false and unsubstantiated.  Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

136.    Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By publishing a book that anyone can easily

purchase through Amazon, and further marketing the book by mailing a promotional postcard to all MiMedx shareholders, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

137.   Defendants' statements were unprivileged and were not made in good faith.

138.   As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation.  Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

139.   Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

## EIGHTH CAUSE OF ACTION
### Defamation – Libel *Per Se*
### (Against All Defendants)

140.   Plaintiff repeats and realleges paragraphs 1-139.

141.   When read as a whole, Petit uses *The Entrepreneur's Dilemma* to accuse Cohodes of being a criminal whose success as short seller is based on illegal activity.

142.   Because Defendants' book accuses Cohodes of committing crimes, *The Entrepreneur's Dilemma* constitutes libel *per se.*

143.   At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew the book's accusations of criminality were false and unsubstantiated.  Alternatively, Defendants acted with reckless disregard as to the falsity of these accusations.

144.   Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By publishing a book that anyone can easily purchase through Amazon, and further marketing the book by mailing a promotional postcard to all MiMedx shareholders, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

145.   Defendants' statements were unprivileged and were not made in good faith.

146.   As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation.  Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

147.   Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

## NINTH CAUSE OF ACTION
### (Defamation – Libel)
### (Against All Defendants)

148.   Plaintiff repeats and realleges paragraphs 1-147.

149.   As set forth above, Petit, through Springdale Publishers, falsely states:

[Cohodes's] publications included his tweets, **documents he developed from interviews he had with former MiMedx salespersons as well as other documents he would create. There is not much logic to the documents because most of the statements are not factual; they are not true.** However, I think he certainly believed that the more misinformation he could publish the further down the MiMedx stock price would be pushed and the more money he would make from his efforts (Page 194)

150.   On their face, these statements tended to injure Cohodes's reputation, implying that he falsified information and manipulated people, exposing him to contempt and ridicule.

151.   At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated.  Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

152.   Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By publishing a book that anyone can easily purchase through Amazon, and further marketing the book by mailing a promotional

1  postcard to all MiMedx shareholders, Defendants have ensured that their false

2  accusations against Cohodes will be widely disseminated.

3      153.   Defendants' statements were unprivileged and were not made in good faith.

4      154.   As the direct and proximate result of Defendants' statements, Cohodes has

5  suffered injury to his professional reputation and has thereby suffered special damages,

6  and continues to suffer damages.  Because Defendants acted with malice, fraud, and

7  oppression, such that Cohodes is entitled to punitive damages.

8      155.   Defendants' conduct has caused and will continue to cause Cohodes to

9  suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law

10  to recover for this harm and is therefore entitled to injunctive relief.

## TENTH CAUSE OF ACTION
### (Defamation – Libel)
### (Against All Defendants)

    156.   Plaintiff repeats and realleges paragraphs 1-155.

    157.   As set forth above, Petit, through Springdale Publishers, falsely states:

> As in our case, employees and former employees can be manipulated by a short seller to file whistleblower claims. Cohodes went on a rampage of talking to former sales employees trying to continue to build some allegation against the company. I ***have documents that Cohodes created by doing supposed interviews with former MiMedx salespersons that were terminated for cause. Cohodes and one of his employees would conduct the interviews and make suggestions and claims that led to false allegations against MiMedx***." (Page 165)

    158.   On their face, these statements tended to injure Cohodes's reputation, implying that he falsified information and manipulated people, exposing him to contempt and ridicule.

    159.   At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated.  Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

    160.   Defendants made these defamatory statements to damage Cohodes's

personal and professional reputation and to rehabilitate Petit's reputation. Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets. By publishing a book that anyone can easily purchase through Amazon, and further marketing the book by mailing a promotional postcard to all MiMedx shareholders, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

161. Defendants' statements were unprivileged and were not made in good faith.

162. As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation and has thereby suffered special damages, and continues to suffer damages. Because Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

163. Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation. He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

## ELEVENTH CAUSE OF ACTION
### (Defamation – Libel)
### (Against All Defendants)

164. Plaintiff repeats and realleges paragraphs 1-163.

165. As set forth above, Petit, through Springdale Publishers, falsely states:

Cohodes literally interviewed almost every salesperson that we had ever terminated. ***He would conduct interviews with these individuals and create documents supporting the interviews. He was effective at manipulating people who were irritated at the company*** because we terminated them for cause related to their violation of government regulations and laws or corporate rules. (Page 204)

166. On their face, these statements tended to injure Cohodes's reputation, implying that he falsified information and manipulated people, exposing him to contempt and ridicule.

167. At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated. Alternatively, Defendants acted

with reckless disregard as to the falsity of the statements.

168.   Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By publishing a book that anyone can easily purchase through Amazon, and further marketing the book by mailing a promotional postcard to all MiMedx shareholders, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

169.   Defendants' statements were unprivileged and were not made in good faith.

170.   As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation and has thereby suffered special damages, and continues to suffer damages.  Because Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

171.   Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

## TWELFTH CAUSE OF ACTION
### (Defamation – Libel)
### (Against All Defendants)

172.   Plaintiff repeats and realleges paragraphs 1-171.

173.   As set forth above, Petit, through Springdale Publishers, falsely states:

I have read documents that he has written ***about issues that have been told to him by unreliable sources without any verification. He writes false tweets that he dreams up, and he will encourage other people to write false information as well. None of that seems to bother him. He calls out, verbally and in writing, honorable people and accuses them of doing illegal things without any proof***. (Page 185)

174.   On their face, these statements tended to injure Cohodes's reputation, implying that he falsified information and caused people to spread false information, exposing him to contempt and ridicule.

---

175.   At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated.  Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

176.   Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By publishing a book that anyone can easily purchase through Amazon, and further marketing the book by mailing a promotional postcard to all MiMedx shareholders, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

177.   Defendants' statements were unprivileged and were not made in good faith.

178.   As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation and has thereby suffered special damages, and continues to suffer damages.  Because Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

179.   Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

## THIRTEENTH CAUSE OF ACTION
### (Defamation – Libel)
### (Against All Defendants)

180.   Plaintiff repeats and realleges paragraphs 1-179.

181.   As set forth above, Petit, through Springdale Publishers, falsely calls Cohodes "delusional," "maniacal," and "psychotic," attributing Cohodes's criticisms of MiMedx and Petit to "psychosis," and asserting that Cohodes "is detached from the truth."

182.   On their face, these statements tended to injure Cohodes's reputation, exposing him to contempt and ridicule.

---

183.   At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated.  Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

184.   Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By publishing a book that anyone can easily purchase through Amazon, and further marketing the book by mailing a promotional postcard to all MiMedx shareholders, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

185.   Defendants' statements were unprivileged and were not made in good faith.

186.   As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation and has thereby suffered special damages, and continues to suffer damages.  Because Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

187.   Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

188.   As set forth above, Petit and Springdale Publishers knowingly and intentionally published false and misleading statements of fact about Cohodes.  These statements include accusing Cohodes of manipulating MiMedx employees and using them to disseminate false information and maligning Cohodes as "psychotic," "delusional," and "maniacal."  On their face, these statements tended to injure Cohodes's reputation, exposing him to contempt and ridicule.

189.   At the time Defendants published *The Entrepreneur's Dilemma*, Defendants knew these statements were false and unsubstantiated.  Alternatively, Defendants acted with reckless disregard as to the falsity of the statements.

190.   Defendants made these defamatory statements to damage Cohodes's personal and professional reputation and to rehabilitate Petit's reputation.  Defendants know that Cohodes is still an active investor and short seller who has built a reputation for uncovering frauds in public markets.  By publishing a book that anyone can easily purchase through Amazon, Defendants have ensured that their false accusations against Cohodes will be widely disseminated.

191.   Defendants' statements were unprivileged and were not made in good faith.

192.   As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation and has thereby suffered special damages, and continues to suffer damages.  Because Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

193.   Defendants' conduct has caused and will continue to cause Cohodes to suffer irreparable injuries to his reputation.  He does not have an adequate remedy at law to recover for this harm and is therefore entitled to injunctive relief.

### FOURTEENTH CAUSE OF ACTION
**False Light Invasion of Privacy**
**(Against All Defendants)**

194.   Plaintiff repeats and realleges paragraphs 1-193.

195.   Throughout *The Entrepreneur's Dilemma*, Petit and Springdale Publishers make myriad false statements about Cohodes.  Defendants call Cohodes a criminal; accuse him of engaging in illegal short selling; state that he intentionally and thoughtlessly spreads misinformation; label him "psychotic" and "delusional"; and accuse him of manipulating people.

196.   These statements create the false impression that Cohodes is an unethical and unpredictable person whose investment success relies on illegal market manipulation schemes.  In reality, Cohodes has long been a successful investor because, through careful analysis, he can identify companies that are overvalued or may be conducting fraudulent or otherwise illegal activities.  Throughout his career, Cohodes has worked

with law enforcement to provide relevant information for investigations into such misconduct.

197.   Defendants knew and intended for their statements to give this false impression of Cohodes.  They also knew and intended for this false impression to be disseminated as broadly as possible by making *The Entrepreneur's Dilemma* easily available to purchase on Amazon and further marketing the book by mailing a promotional postcard to all MiMedx shareholders.

198.   As the direct and proximate result of Defendants' statements, Cohodes has suffered injury to his professional reputation.

199.   Defendants acted with malice, fraud, and oppression, such that Cohodes is entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Cohodes respectfully prays for judgment in his favor against Defendants as follows:

a.  For general and special damages according to proof at trial;

b.  Punitive damages in an amount sufficient to punish Defendants' wrongful conduct and to deter future misconduct;

c.  That all Defendants be preliminarily and permanently enjoined from making any further false, misleading, or defamatory statements concerning Plaintiff;

d.  Such other relief as the Court may deem just and proper.

Dated: September 13, 2024

/s/ Jason Marcus_____
JASON MARCUS, Local Counsel
Georgia Bar No. 949698
BRACKER & MARCUS LLC
3355 Lenox Rd., Suite 660
Atlanta, Georgia 30326
Telephone: (770) 988-5035

Facsimile: (678) 648-5544
Jason@fcacounsel.com

FRED NORTON (*applying for pro hac vice*)
CA SBN 224725
fnorton@nortonlaw.com
LEAH JUDGE (*applying for pro hac vice*)
CA SBN 302406
ljudge@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900

*Attorneys for Plaintiff MARC COHODES*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF